IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JACKIE ROBINSON, | ) | CASE NO. 5:07 CV 2888 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Jackie Robinson, for disability insurance benefits and supplemental security income.  The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Robinson had severe impairments consisting of status post left nephrectomy, obstructive sleep apnea, and diabetes mellitus type II.[1]  The ALJ made the following residual functional capacity finding:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the exertional and nonexertional requirement of basic work-related activities except for lifting, carrying, pushing and pulling more than 10 pounds frequently, and up to 20 pounds more than occasionally; standing and/or walking for more than a total of

_____

[1] Transcript ("Tr.") at 20.

> 6 hours in an 8-hour workday; sitting for more than a total of 6 hours in an
> 8-hour workday; (exertional) work involving climbing ladders, ropes or
> scaffolds; and crawling (nonexertional).[2]

The ALJ determined that the above-quoted residual functional capacity precluded Robinson from performing his past relevant work.

Based on a hypothetical question posed to the vocational expert at the hearing incorporating the above-quoted residual functional capacity, the ALJ decided that a significant number of jobs existed locally and nationally that Robinson could perform.[3] He, therefore, found Robinson not under a disability.[4]

Robinson asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, he complains that the ALJ erred by not finding depression as a serious impairment at step two of the sequential evaluation process. Further, Robinson argues that substantial evidence does not support the exertional limitations incorporated into the residual functional capacity finding.

I conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

---

[2] *Id.* at 21.

[3] *Id.* at 27-28.

[4] *Id.* at 28.

**Analysis**

**1.      Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[5]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[6]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[7]

---

[5] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[6] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[7] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

-3-

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.      Depression as a severe impairment**

Robinson first complains that the ALJ erred by not finding that he had the mental impairment of depression at step two of the sequential evaluation process.  Under the Sixth Circuit's decision in *Maziarz v. Secretary of Health & Human Services*,[8] the failure to properly characterize an impairment as a severe impairment at step two has no consequence where, as here, the ALJ moves on to complete the sequential evaluation analysis at steps four or five.  The issue is whether the ALJ properly evaluated Robinson's work-related limitations at step four.  I will discuss that issue below.

**3.      Work-related limitations related to Robinson's mental depression**

As to depression and any nonexertional limitations that may flow therefrom, the record contains an evaluation done in 2004 by John S. Quinn, Ph.D., a psychologist.[9] Counsel for Robinson conceded at the oral argument herein that Dr. Quinn's finding of mild or limited mental limitations supports the ALJ's decision to impose no additional nonexertional limitations in the residual functional capacity finding.

The record also contains progress notes from a nurse practitioner, Will D. Benson,[10] which propose no specific limitations and provide unremarkable mental status examination

---

[8] *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

[9] Tr. at 190-95.

[10] *Id.* at 414-25, 427-31.

-4-

reports.[11]  An intake assessment prepared by Rebecca Roberts-Martin, Ph.D., a psychologist, likewise offers no opinion as to limitations.[12]

In 2006, following kidney surgery, Robinson complained of post-operative pain, and his pain management physician, David P. Gutlove, M.D., offered an opinion that Robinson was not able to hold down permanent gainful employment.[13]  The ALJ addressed this opinion in his decision[14] but gave it minimal weight because of later notations in the treatment notes by Dr. Gutlove that Robinson was doing well and was ambulating freely with non-antalgic normal gait and had no difficulty rising from or descending into a chair.[15]

A treating source is a physician or other acceptable medical source who has provided the claimant with medical treatment or evaluation as part of an on-going treating relationship.[16]

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

---

[11] *Id.* at 412, 428, and 430.

[12] *Id.* at 414-25.

[13] *Id.* at 379.

[14] *Id.* at 24, 27.

[15] *Id.* at 24.

[16] 20 C.F.R. § 404.1502.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[17]

If such opinions are "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence in [the] case record," then they must receive "controlling weight."[18]

To be eligible for such weight, the medical opinion must be a statement that reflects judgments about the nature and severity of the impairment(s), including symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and physical and mental restrictions.[19]

Particularly, in the context of residual functional capacity, to be given weight the medical source opinion must address how the claimant's impairments translate into work-related restrictions.[20]  As described in one Social Security Ruling, to be considered for weight, the source statement should address "what an individual can still do despite severe

---

[17] 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

[18] *Id.*

[19] *Id.* at 404.1527(a)(2), 416.927(a)(2).

[20] *Cf. Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2d Cir. 2003).

impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis."[21]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[22]  Conclusory statements by treating sources that a claimant is disabled are not entitled to deference under the regulations.[23]

Here, Dr. Gutlove's disability opinion in February of 2006 is a conclusory statement and is contradicted by later progress notes indicating improvement in Robinson's condition. On balance, therefore, the ALJ's decision to impose not additional mental limitations in the residual functional capacity finding has the support of substantial evidence.

**4.     Exertional limitations on lifting**

The medical expert who testified at the hearing, Robert Newman, M.D., offered the opinion that Robinson could not lift more than 15 pounds.[24]  Counsel for the Commissioner conceded at the oral argument that this limitation would render Robinson light minus or sedentary plus and preclude all jobs identified by the vocational expert at the light level.  The ALJ, however, adopted a 20 pound lifting limitation in the residual functional capacity

---

[21] Soc. Sec. Ruling (SSR) 96-5p.  Titles II and XVI:  Medical Source Opinions on Issues Reserved to the Commissioner, 61 Fed. Reg. 34471, 34473 (July 2, 1996).

[22] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

[23] *Schuler*, 109 F. App'x at 101.

[24] Tr. at 499-500.

-7-

finding.[25]  This brought Robinson up to the light level, and the hypothetical to the vocational expert at that level elicited a response identifying jobs existing in significant numbers that would preclude a disability finding.[26]

Although the vocational expert testified that such jobs would not be available at the light minus/sedentary plus level, he was not asked if other jobs existed in the national economy that Robinson could perform at this diminished residual functional capacity. Robinson argues that at light minus/sedentary plus, he would have gridded out.  To the contrary, the modified residual functional capacity would have taken Robinson out of the grids and would have required vocational expert testimony.  Because the vocational expert was not asked about jobs existing at the light minus/sedentary plus level, the record is silent as to what jobs might have existed at the modified residual functional capacity.

The Commissioner argues that the ALJ properly concluded, based on substantial evidence, that the medical expert's 15-pound limitation is not supported by the record.  The ALJ provided the following articulation:

> I give Dr. Newman's opinion moderate weight; however, I find that the claimant's ability to lift 20 pounds occasionally and 10 pounds frequently is supportive of the evidence of record as a whole.  The claimant's treating physician indicated that the claimant was doing well, his gait was not impaired and he did not impose restrictions on the claimant's ability to lift or carry. Furthermore, the evidence of record does not revela that the claimant had limitations in lifting and he was even noted to have no physical limitations by Dr. Gutlove (Exhibit 19F, pg. 3).  In fact, his treating physician, Dr. Cisneros indicated that he need [sic] to increase his physical activity on May 15, 2006,

---

[25] *Id.* at 21.

[26] *Id.* at 28.

because his weight gain of 20 pounds was directly affecting his morbid medical problems (Exhibit 22F, pg. 4).  Thus, there is nothing in the evidence of record to suggest that the claimant would not be able to lift more than 15 pounds occassionally [sic].[27]

As the Sixth Circuit observed in *Buxton v. Halter*, there exists a "zone of choice" within which the Commissioner can act without interference from the reviewing court.[28]  The concept of a "zone" implies that evidence having varying cumulative weight may suffice to provide substantial evidence supporting the Commissioner's decision.  On the one end of the zone, the objective medical evidence may be such to convince the reviewing court that, even under the *de novo* standard, the Commissioner decided the case correctly.  But, on the other end of the zone, the evidence may be less compelling.  Such evidence may cause the reviewing court to question whether it would have decided the case in the same way under the *de novo* standard.  Nevertheless, if the Court concludes that a reasonable mind might accept the evidence as adequate to support the Commissioner's conclusion, it must affirm the Commissioner.

Here, the ALJ articulated a reasonable basis for concluding that Robinson could lift 10 pounds frequently and 20 pounds occasionally.  The evidence also contains, however, some evidence supporting a finding that Robinson might have greater exertional limitations. The Commissioner's decision, therefore, falls within the zone of choice within which this Court must affirm.

---

[27] *Id.* at 26-27.

[28] *Rogers*, 486 F.3d at 241; *Buxton*, 246 F.3d at 772.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Robinson had no disability.  Accordingly, the decision of the Commissioner denying Robinson's disability insurance benefits and supplemental security income applications is affirmed.

IT IS SO ORDERED.


Dated:  September 24, 2009                         s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge

-10-